IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ACIE ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-05-0878-HE |
| ) | |
| TACO BUENO RESTAURANTS, ) | |
| L.P., a foreign limited partnership, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Acie Anderson sued his former employer, Taco Bueno Restaurants, L.P. ("Taco Bueno"), alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and 42 U.S.C. § 1981. He contends he was subjected to a race-based hostile work environment and was discriminated against and terminated because of his race and in retaliation for complaining about the harassment. Taco Bueno has moved for summary judgment, claiming the plaintiff cannot establish a prima facie case of discrimination or retaliation, that it had a legitimate, nondiscriminatory reason for discharging him and that any harassment was neither race-based nor sufficiently severe to create an abusive working environment.

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence and any reasonable inferences that might be drawn from it are viewed in the light most favorable to the nonmoving party. Davidson v. America Online, Inc., 337 F.3d 1179, 1182 (10th Cir 2003). Having applied the Rule 56 standard

to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir.1998) (internal quotation and citation omitted), the court concludes the defendant's motion should be granted.[1]

## Background

For almost six years plaintiff Anderson worked for Taco Bueno in a restaurant in Stillwater as a crew member, washing dishes and doing food preparation and other miscellaneous jobs. He was terminated on August 13, 2004, by Chris Ash, his immediate supervisor and the restaurant's general manager, allegedly for arguing with another employee. The plaintiff contends that during his last year of employment he was subjected to a hostile work environment, principally because of the conduct of two of his co-workers, Lynn Sawyer and Elena.[2] He claims that beginning in the fall of 2003, Lynn began to hassle him by throwing things such as sour cream bottles, guacamole and bean pans, and kitchen knives into his clean tray water. As described by the plaintiff, these were "[j]ust little things that he would go along and do ..... just to pick," despite the plaintiff's request that he stop. Plaintiff's depo. p. 97. In January, 2004, Lynn pushed or pulled a chair out from under the

---

[1]*In reaching this decision, the court has not considered the affidavits of Mark Williams, Mark Vinson, or Broderick Mannings, defendant's Exhibits 3-5, challenged by the plaintiff in his motion to strike.*

[2]*The plaintiff refers to his coworkers generally by their first names, stating employees were not allowed to learn their co-workers' last names. Plaintiff's depo. p. 115. The court will do the same, at least as to some of the defendant's employees. Both Lynn and Elena are Caucasian; the plaintiff is African-American.*

plaintiff's arm when he was writing a shopping list while off-duty, and the following March he called the plaintiff a "fucking nigger." That was the only time Lynn or any other Taco Bueno employee used a racial slur in the plaintiff's presence.[3]

The plaintiff's problems with Elena consisted of two incidents. Plaintiff's depo. p.110. On her first day on the job in early February, 2004, she told the plaintiff to get out of her area. The next month she repeatedly snatched a trash can he was using, and, after he finally pulled it away from her and was walking away, she pushed him. The plaintiff states that during this confrontation Elena also shouted at him and Ash came back and told them both to be quiet. When asked what made him think Elena's behavior had anything to do with his race, the plaintiff initially replied, "It was just Elena." *Id.* He then said the motivation for her conduct was evidenced by her ability to get along with everyone but him. *Id.* As further evidence that Elena mistreated him because of his race, the plaintiff referred to an incident when she allegedly was rude to a black customer. He admitted, however, that he did not hear their conversation. *Id.*

Although the plaintiff complained to Ash four or five times between January and May,

---

[3]*Although the plaintiff admits that he "only heard Lynn use racially derogative language directly towards him" on that one occasion, he "disputes that the record supports an allegation that 'the only time Plaintiff ever heard Lynn use any racially derogatory language' was the March, 2004 incident." Plaintiff's response, p. 6, ¶28. However, the plaintiff does not offer any evidence showing that Lynn or any other Taco Bueno employee used racial slurs in his presence at other times and testified to the contrary. Plaintiff's depo. p. 102 (plaintiff responded "no" when asked: "Did any employee at Taco Bueno, during the time that you worked there on this second go-round, ever make any racist comments that you overheard?).*

2004, about the throwing incidents and Elena's behavior, he contends nothing was done so he quit complaining.[4] He did not tell Ash that he believed Lynn's actions were racially motivated[5] and did not complain to him or any other supervisor about the racial slur. The plaintiff asserts that he did tell the shift leader, Dan, about the racial comment and Dan said he would notify Ash. The record does not reflect that Ash was ever advised of Lynn's racial remark. Lynn left Taco Bueno in May, 2004.

The plaintiff claims that each time he complained about his co-workers' conduct Ash retaliated against him by reducing his hours. He does not, though, provide specific dates for his complaints, so they cannot be correlated with his assigned hours. The plaintiff's earnings statements do reflect a drop off in hours between approximately February 18, 2004, and April 14, 2004, and a two week period in late March when he did not work at all. Defendant's Exhibit 15. However, his hours then increased to about the same level they were the previous November and December.

---

[4]*The plaintiff states that he attempted to contact Mark Williams, the district manager, about "racism in general and the hostile work environment," plaintiff's response, p. 7, ¶35, but his calls were not returned. The plaintiff did not, however, provide the dates these calls were made or other information about them. It appears from the plaintiff's testimony that these calls occurred after he was terminated. See plaintiff's depo. pp. 88-89.*

[5]*The plaintiff testified that he did not tell Ash he believed Lynn was taunting him due to his race because he "felt as though Chris was influencing it by not taking care of the matters," Plaintiff's depo. pp. 117-18, and was "complicit in the racism." Plaintiff's Exhibit 1, plaintiff's affidavit, ¶8. The plaintiff fails, however, to substantiate his conclusory allegations about Ash. His testimony that he thought Ash was a racist because, when informed about the chair incident, Ash said he would take care of it, but instead sent his assistant manager to handle it, plaintiff's depo. pp. 118-19, is simply not probative.*

The plaintiff also contends that, after lodging complaints with management, he "became the immediate focus of disciplinary actions." Plaintiff's response, p.12. The discipline he cites consists of counseling he, along with Lynn, received on February 4, 2004, for engaging a shouting match,[6] a written reprimand dated July 30, 2004, and his termination in August. The plaintiff received the written reprimand for arriving late to work without notifying his manager.[7] It was noted on the Record of Reprimand that "this has happened before." Defendant's Exhibit 9. The plaintiff was placed on 30 days probation and advised that he could be terminated if he violated company standards or policies during the probationary period. He was discharged along with another employee, Regina Alexander, about two weeks later.[8]

The plaintiff asserts that his termination occurred after Regina became upset with management and started an "emotional tirade" that spilled over into his work area. He claims she began to confront him and started screaming and using profanity. Although he at first ignored her and tried to continue working, eventually, without raising his voice, the plaintiff

---

[6]*The plaintiff objected to defendant's reliance on the handwritten note reflecting the counseling, which was neither signed nor authenticated, yet referred to it in his brief, plaintiff's response, p. 12, ¶30, and attached it as an exhibit (#9).*

[7]*While he admits that he was late and was placed on probation, the plaintiff attributes his tardiness to "the erratic way in which [he] became scheduled for work at Taco Bueno." Plaintiff's Exhibit 1, ¶ 16.*

[8]*The defendant also submitted evidence that the plaintiff had been disciplined two other times – on November 27, 2001, for insubordination and on December 13, 2002, for refusing to complete his shift . Defendant's Exhibit 7.  These incidents occurred too long ago to be considered relevant.*

asked her to leave his area. Because of the ruckus Barbara was making, Ash appeared in the plaintiff's work area and, the plaintiff maintains, immediately fired him without asking any questions or conducting any investigation. Ash also fired Regina, who was Caucasian.

The only other conduct cited by the plaintiff to support his discrimination claims[9] consists of his alleged mistreatment by a former first assistant manager in 2003, his being denied access by another employee to the restaurant, his receipt of only partial payment for an employee referral, and his lack of pay raises.[10] In April, 2003, the plaintiff sent a letter to the defendant's human resources department,[11] stating he thought "there was racial bias by First Assistant Mark Williams, in store, and I felt as though that there would be retaliation by other managers." Plaintiff's depo. p. 78.[12] The plaintiff recalled only one specific act of Williams when testifying as to Williams' alleged racial bias. He stated that one morning he was supposed to take out some trash bags and joked with a coworker that he would return

---

[9]*The court has disregarded the conclusory assertions in the plaintiff's affidavit. Statements such as "I was continually subjected to derogatory treatment, mental, verbal and physical assaults and hostility," plaintiff's Exhibit 1, p. 3, without substantiation, are insufficient to create a triable issue of fact.*

[10]*The court has not considered the defendant's decision to stop purchasing the type of gloves the plaintiff used when washing dishes and its refusal to allow him to purchase the gloves through the store, as he states that the decision was not "based on purely racial reasons." Plaintiff's response, p. 7, ¶38. The lack of needed information about the purchasing decision, included the identity of the person who made it, also prevents it from having any evidentiary value.*

[11]*Neither party produced the letter.*

[12]*Taco Bueno employed two Mark Williams, one was a district manager, the other an assistant manager in the Stillwater Taco Bueno.*

in thirty minutes.  About five minutes later when he went back in the store, Williams approached him and sent him home.  When asked what that had to do with his race, the plaintiff replied "I just felt it was racial indifference."  Plaintiff's dep. p. 80.  Although the plaintiff denies that his complaint about Williams was limited to this single incident, he fails to specify any other objectionable conduct.  See plaintiff's brief, p. 5, ¶21.[13]

The plaintiff also claims that he "was intentionally locked out of the building." Plaintiff's response, p. 10, ¶13.  However, he mischaracterizes the deposition testimony he cites to substantiate this statement.[14]  *See* plaintiff's depo. pp. 210-12.  He also fails to demonstrate that he satisfied the requirements to receive the full bonus for employee recruitment,[15] or that other non-African American employees received raises while his salary stayed the same.  The only pay records the plaintiff attaches to his brief are his own.

After exhausting his administrative remedies with the  Equal Employment Opportunity Commission without obtaining relief, the plaintiff filed this lawsuit, seeking

---

[13]*Williams, the district manager, then went to the Stillwater restaurant in late April or early May, 2003, and met individually with the plaintiff and Williams, the assistant manager.  He gave the plaintiff his phone numbers, both office and cell, to contact him with any further complaints   The plaintiff never called Williams again at his Tulsa office until after he was terminated.  Plaintiff's depo. pp. 88-89.*

[14]*The cited testimony also does not support an inference that Jim, the employee who apparently had closed the restaurant when the plaintiff showed up late one evening to check the work schedule, refused to reopen the doors because of the plaintiff's race.  The plaintiff similarly fails to show that race motivated the other instances of alleged discriminatory treatment he relies on to establish his claims.*

[15]*See plaintiff's Exhibit 6 (referring employee receives $750 after new management employee works four weeks and another $750 after he/she works six months).*

compensatory and punitive damages.

## Discussion

Hostile Work Environment

"To survive summary judgment on a racially hostile work environment claim, a plaintiff must show 'that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'" Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005) (quoting Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir.1994)).  A showing of pervasiveness requires "more than a few isolated incidents of racial enmity." Bolden, 43 F.3d at 551 (internal quotation omitted).  "Instead, 'there must be a steady barrage of opprobrious racial comments.'" Chavez, 397 F.3d at 832 (quoting Bolden, 43 F.3d at 551).

Lynn's single racial slur is not actionable.  Bolden, 43 F3d. at 551.  The racial comment must, however, be considered along with Lynn and Elena's other behavior to determine whether the plaintiff has presented sufficient evidence to support the inference of pervasive racial harassment.  This he has not done.  Lynn and Elena's conduct was not overtly racial and the plaintiff did not show it stemmed from racial animus.  *See* Bolden, 43 F.3d at 551 ("General harassment if not racial... is not actionable.").

However, even if their abuse was race-based,[16] the plaintiff did not come forth with

---

[16]*Another former Taco Bueno employee, Cody Sartin, stated that he repeatedly heard Lynn use racial slurs when referring to the plaintiff.  Plaintiff's Exhibit 3, Sartin affidavit.*

8

proof of harassment that was "'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment.'" Chavez, 397 F.3d at 832 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  Factors considered when evaluating severity and pervasiveness include the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the employee's work performance. *Id.*

Although undeniably annoying and inappropriate, the behavior of the plaintiff's coworkers falls short of the type of race-based abusive conduct required for a hostile environment claim. *See* Bolden, 43 F.3d at 551-52.  The plaintiff did not testify that he was physically threatened or humiliated when Lynn threw things into his dishwater.  He also did state how often the behavior occurred or indicate that Lynn prevented him from doing his job.  The plaintiff's two encounters with Elena, even when considered in conjunction with Lynn's actions, are not indicative of a hostile work environment.

In the absence of evidence that the alleged harassment was pervasive or severe and that the plaintiff was the object of harassment because of his race, the defendant is entitled to summary judgment on the plaintiff's hostile work environment claim.

Race Discrimination

The McDonnell Douglas[17] analytical framework guides the court's review of the

---

[17]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

plaintiff's race discrimination claim.[18] <u>Antonio v. The Sygma Network, Inc.</u>, 458 F.3d 1177, 1181 (10th Cir. 2006). The court has assumed the plaintiff has established a prima facie case.[19] As Taco Bueno has offered a legitimate, nondiscriminatory reason for the decision to discharge him – engaging in a verbal altercation while on probation – the burden shifts back to the plaintiff to show there is a genuine issue of material fact as to whether the defendant's explanation was pretextual or unworthy of belief. <u>Green v. New Mexico</u>, 420 F.3d 1189, 1192 (10th Cir. 2005).

Pretext can be shown by "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." <u>Antonio</u>, 458 F.3d at 1183 (quoting <u>EEOC v. BCI Coca-Cola Bottling Co.</u>, 450 F.3d 476, 490 (10th Cir. 2006). When assessing a contention of pretext, the court "look[s]

---

[18] *"The <u>McDonnell Douglas</u> burden-shifting analysis is appropriate in ... discrimination cases such as the present one, in which the plaintiff has no direct evidence of discrimination and the employer disclaims reliance on the plaintiff's [race] for an employment decision." <u>Morgan v. Hilti, Inc.</u>, 108 F.3d 1319,1323 n.3 (10th Cir. 1997) (applying <u>McDonnell Douglas</u> test in action brought under the Americans with Disabilities Act and the Family and Medical Leave Act). "[I]n racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in <u>McDonnell Douglas</u>, whether that case is brought under §§ 1981 ...or Title VII." <u>Drake v. City of Fort Collins</u>,927 F.2d 1156, 1162 (10th Cir.1991).*

[19] *A prima facie case requires a showing that (1) the plaintiff belongs to a protected class; (2) was qualified for his job; and (3) despite his qualifications, was discharged. <u>Green v. New Mexico</u>, 420 F.3d 1189, 1192 n.3 (10th Cir. 2005).*

at the facts as they appear to the person making the decision to terminate, not the aggrieved employee." Green, 420 F.3d at 1191 n.2. The court "may not second guess the business judgment of the employer." Selenke v. Medical Imaging of Colo., 248 F.3d 1249, 1261 (10th Cir. 2001).

The plaintiff had been counseled for arguing, he was on probation for having been late to work and, within the probationary period, Ash heard an altercation and, correctly or incorrectly, concluded the plaintiff was a participant. While perhaps, as the plaintiff asserts, Ash should have conducted an investigation instead of firing both him and Rachel, the relevant question is "whether the reason articulated by the employer was the real reason for the challenged action." *Id.*

After careful review of the submissions of the parties, including the plaintiff's proferred evidence as to retaliation, the court concludes the plaintiff has not produced evidence sufficient to create a factual dispute as to pretext. Nothing in the record indicates that race played a factor in the plaintiff's discharge. Therefore, the defendant is entitled to summary judgment on the plaintiff's race discrimination claim.

Retaliation

The plaintiff's retaliation claim also is analyzed under the McDonnell Douglas burden-shifting framework. Antonio, 458 F.3d at 1181. He initially must show that "(1) [he] engaged in protected opposition to discrimination; (2) [he] suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between [his] opposition and the employer's adverse action." *Id.* If the plaintiff can establish a prima

facie case, the defendant then must articulate a legitimate, nondiscriminatory or non-retaliatory reason to support its employment decision. Taco Bueno contends the plaintiff has not submitted evidence demonstrating either that he engaged in protected activity or the causal connection element of his prima facie case. Even if he overcomes these hurdles, the defendant argues that the plaintiff has no evidence showing that its stated reasons for his termination are pretextual.

The court agrees. The plaintiff did not engage in protected activity, as the complaints he lodged within the statutory period[20] about Lynn and Elena were not concerning mistreatment based on his race. The causation element of his prima facie case also is lacking. "A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" O'Neal v. Ferguson Constr. Co. 237 F.3d 1248, 1253 (10th Cir. 2001) (quoting Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir.1982)). However, "'[u]nless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." Antonia, 458 F.3d at 1182 (quoting O'Neal, 237 F.3d at 1253). The plaintiff failed to provide the court with sufficient information to link his complaints to Ash with the reduction in his hours and, since the plaintiff's complaints about Lynn had to have occurred before his May departure, the gap between the plaintiff's complaints and his termination in August is too great to support an

---

[20]*The letter sent to the defendant's human resources department was outside the limitations period.*

inference of causation.  Assuming the plaintiff had met his initial burden and established a prima facie case, as has been discussed in conjunction with the plaintiff's discrimination claim, he offered no evidence to rebut the defendant's proffered legitimate reason for his termination.

The plaintiff has not shown that he opposed unlawful discrimination or that a connection existed between his complaints and an adverse employment action.  He also has provided no evidence that would allow a reasonable fact finder to question the defendant's motivation for its decision to discharge him.  Summary judgment also is warranted on the defendant's retaliation claim.

Accordingly, the defendant's amended motion [Doc. #38] is **GRANTED** and summary judgment will be granted in favor of the defendant and against the plaintiff on all claims.

**IT IS SO ORDERED**.

Dated this 13th day of October, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE